Good morning. My name is Victoria Biesman, and may I please the Court, my name is Victoria Biesman, and I represent the Respondent Vardan Khodaverdyan. I did not have an opportunity to represent Respondent during trial. The attorney who has represented him during the trial and on appeal to the BIA had passed away, Mr. Zakian. This is one of the Judge Kilroy cases also. Judge had denied the asylum and the Board affirmed without the opinion. In his decision, Judge Kilroy did not make any finding in regard to the credibility, so I would say that it's safe to assume that there is no adverse credibility finding. However, Court had proceed and find that the Respondent had not presented enough evidence to show the past persecution or the well-founded fear of the future persecution. This is the case based on a mixed ethnicity. Respondent's wife, she is half-Azeri, half-Armenian. She came to Armenia from Azerbaijan. Her birth certificate reflects that she is from Azerbaijan. Her Armenian passport reflects that she is indeed from Azerbaijan. I would like to indicate to the Court that this is the case that I believe is based on pattern of persecution of the people of the mixed ethnicity. As the Court had noted in a previous case, it is well-known fact that people of the mixed ethnicity are persecuted in Armenia and that the government, Armenian government does very little to stop or prevent the persecution. As of today, Armenia is not a country of diverse ethnicity. Ninety-seven percent of Armenian populations are pure ethnic Armenians. Respondent in his testimony had testified that his family had suffered extreme harassment, that his son and his wife endured extreme verbal abuse, that the family life had been threatened because the bottle had been thrown into their home that ignited the fire and they all could have died. Once again, the judge did not say that he did not believe the respondent. No. The judge said that even assuming that the respondent is telling the truth, he nevertheless broke the U.S. law because he came to the United States. And presented a fraudulent passport. And that's what I would like to address because I believe that... Fraudulent passport from what? From Armenia. It was not a passport in his name. In order to leave Armenia, the respondent had to have a visa so that he could exit Armenia. There has to be a stamp in his Armenian passport that allows him to leave Armenia. Part of the respondent's original passport, in his true name, is part of the record. And it's clear that he had attempted to obtain a visa to the United States on four occasions, in 96, in 97, in 98 and 2000. And the visa was his wife and two children were already in the United States. Respondent had no choice. He had to leave Armenia because he has been suffering persecution. Well, after his wife and children were in the United States, what was his fear of future persecution because he had an Azeri wife? I will respond, Your Honor. If there, why is he going to be persecuted? He had to change the place of residence once in order for him to register. He has to present his passport, his wife's passport. And his wife's passport does reflect that she is from Azerbaijan. So he had the difficulty to register, you know, new family residence. He has lost number of jobs. The government in its brief points that he had requested to, you know, to be dismissed. But it's not true. In Armenia, his workbook is in the possession of the employer. And he has no say into what they will put in his workbook. His workbook does indicate that he had lost, you know, like jobs subsequent to her departure. His passport also reflects that he is married and to whom he is married. He cannot change it. All of this information is readily available to the employers, to any government official. Everything is noted in his passport. How did his wife get here? His wife got here legally. She was able to obtain U.S. visa. And she had filed for asylum. However, it was not, I believe, timely filed. But once again, she came with a child. She did not have means to... What's her status now? It's pending. There is, you know, like there is no decision on her case. Before where? I believe it's before the BIA. Well, in his, when he came into the United States on this dubious passport, he didn't claim asylum. He said, well, I didn't want to call attention to my wife because then she might be in trouble. John, and I would like to address that issue also. When he came to United States and was a telephonic interpreter, there are two dialects of Armenian. Armenian Eastern dialect and Armenian Western dialect. He speaks Eastern. The interpreter at the airport was Western dialect Armenian. The statements that he gave at the airport are not consistent. And I believe that this court had my ruling in the past that the, that the, that the interpreter was due to the nature of the translations at the airport, if I could have a second, that they are not, I'm sorry, Your Honor. Your Honor, I am referring to Manifbao v. Ashcroft, in which, in that case, the court held that we have long recognized the difficulties in interpretations may result in seeming inconsistencies, especially in cases where there is no, where there is a language barrier. And then in Sink v. INS, the court held that inconsistencies between applicant airport interviews and testimony do not constitute valid grounds for adverse credibility determination, especially given the lack of the interpreter who spoke applicant's language. This is exactly the case. The respondent, he had somebody who spoke completely different dialect, and the differences between two Armenian dialects is as big as Russian and Ukrainian. He seems to speak Slavic language, but it's two different languages. Furthermore, the respondent had provided consistent testimony, and his wife also testified during the proceedings before Judge Kilroy. Unfortunately, the wife's testimony is not part of the proceedings because the court failed to record it. It has not been raised as an issue on the BIA appeal. Nevertheless, it is an issue because the court does not have a complete record. Testimony, in her case or in the case? No, in the respondent's case. Okay? The R.J. denial of asylum is solely based on the fact that the respondent did not present his own passport. But once again, the respondent could not leave Armenia having two passports in his possession. He had only one passport, which was in someone else's name, not his name. As soon as his passport had became available, the copy of the passport had been submitted to the INS, and it is part of the record. Okay. I would – I think you've just about used your time. I'd like to hear from the government. Thank you. Your Honor, can I just one second? We'll give you a moment. We'll give you a minute, Your Honor. May it please the Court, my name is Thankful Vanderstar. I represent the Attorney General of the United States. I'm perplexed. Yes. The passport issue. Yes. Do you rely on that in your briefs? Yes, Your Honor. Let me respond and try to clear up the confusion. There are actually three bases for the denial of asylum in this case. Number one, that there was no past persecution, because what the petitioner and his family experienced was discrimination and not persecution, did not rise to the level of persecution. Right. Number two, that they do not have a well-founded fear of future persecution for several reasons, primarily that what we're talking about here is discrimination and not persecution. Right. And finally, in the exercise of the immigration judge's discretion, based on – there was a denial of asylum, based on the presentation of a fraudulent passport, as well as the circumstances surrounding how the petitioner's family came to the United States. So the issue regarding the passport only goes to the discretionary denial of asylum. But I would like to focus first on the question of whether or not there was past persecution, whether or not there's a well-founded fear of future persecution, because this case really turns on the question of whether or not we're talking about harm that rises to the level of persecution, or whether we're giving a lot of bearing weight to the false passport. It's part of the discretionary denial, which we do ask this Court to affirm, but we don't need to get to the discretionary denial, because we have statutory ineligibility here. The record – the substantial evidence in the record supports the immigration judge's conclusion that what we're looking at here is discrimination. There were only a handful of incidents – one in 1992, one in 1995, one in 1997, and one in 1999. Now, first of all, there are, you know, two or three years in between incidents. There's only one incident that involves any physical harm that came to anyone, and that was when the police allegedly hit the petitioner when he went to complain about the discrimination that his family was facing. There was an attempt at physical harm when stones and a burning bottle were thrown at the petitioner's son when he was being taunted. But – When did they come to this – how long had they been living in this country? It's my understanding that the petitioner's wife came here in 1999 with one son, and then the other son was brought over here illegally. I'm not sure when. It's not clear in the record. And then, actually, the petitioner himself did not come until April of 2002. I would like to also point out to the Court that from the time that the petitioner's wife and one son left in 1999, the petitioner himself admits that he had no problems in Armenia, experienced no more incidents of the kind that he testified to. Furthermore, the State Department documents submitted in the record support the conclusion that, number one, we're talking about discrimination, albeit systemic, but discrimination nonetheless, and that, in fact, Armenia is making efforts to try to overcome this. Armenia instituted a program to extend citizenship to refugees. There were approximately five years of outreach programs sponsored to assimilate refugees. And the State Department documents both say specifically that what people of mixed ethnicity face in Armenia is societal discrimination and not government persecution, or even government discrimination. The record certainly does not, therefore, compel the conclusion that the petitioner suffered either past persecution or has a well-founded fear of future persecution. Turning to the discretionary denial, this Court reviews that for an abuse of discretion, and all of the factors that went into the immigration judges rendering that determination should lead this Court to affirm that finding as well. The immigration judge based the discretionary denial on not just the fact that the petitioner came with a fraudulent passport and tried to enter the United States by committing fraud, but also that his wife and children came to the United States or at least have remained in the United States illegally circumventing orderly refugee procedures. There is no evidence in the record that I'm aware of that the petitioner, in fact, sought visas four times. The only reference that I recall from the record is during his testimony when he stated that he sought a visa in 1999, so that was only one time. There are no, actually, there are no administrative record references in either of the petitioner's opening or reply brief. I'd also like to just point out with regard to the issue of the airport translation, as well as the fact that the wife's testimony is not in the record, that those issues have both been waived by the petitioner. They were neither raised to the Board nor raised to this Court. If there are no other questions, the government asks this Court to affirm the decision below. Thank you. In regard to the respondent seeking four visas, the last page of his passport has stamped that he had been rejected visas four times. Also, in regard to the past persecution, this Court had held that severe and pervasive discrimination can amount to a fine of up to $100,000. Furthermore, the Court held in Kataz that proof that the government or other persecutor has discriminated against the group to which the petitioner belongs, accordingly, always relevant for the asylum. And in Karablina, the Court had held that discrimination, harassment, and violence can constitute a fine of up to $100,000. In Valencia, Castilla, the Court found the persecution where the applicant was branded as a traitor, and as the last, I would like to point, that the respondent had spent 25 months in detention. He has been released only last month. If he did not have a fear of return, he would go back to Armenia. Moreover, Your Honors, the respondents are here in a courtroom. Thank you. Your time has expired. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned. This Court for this session stands adjourned.
judges: Schroeder, Goodwin, Tashima